# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAVIER ECHEVARRIA, | : | Civil No. 3:16-cv-770 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| BRIAN COLEMAN, et al., | : | |
| Respondents | : | |

## MEMORANDUM

Petitioner Javier Echevarria ("Echevarria") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a conviction and sentence imposed in the Court of Common Pleas of Lycoming County, Pennsylvania. (Doc. 1). For the reasons discussed below, the petition will be denied.

## I. Factual Background

The factual background of this case has been summarized by the state courts as follows:

> Javier Cruz-Echevarria (Defendant) was charged with criminal Homicide and Criminal Conspiracy to Commit Homicide. It was alleged that on March 31, 2007, the Defendant conspired with Sean Durrant (Durrant) and Maurice Patterson (Patterson) to murder Erie Sawyer. The Defendant and Durrant met Sawyer in an alleyway and Durrant shot and killed Sawyer with a sawed-off shotgun. As part of the Commonwealth's evidence against the Defendant, Durrant testified as to the Defendant's involvement in the homicide. On May 14, 2008, following a jury trial before this Court, the Defendant was found guilty of both charges. The Defendant was sentenced to Count I First Degree Murder to a State Correctional Institution for life without the possibility of parole. In addition, the Defendant received another

concurrent life term of imprisonment for Count 2 Criminal Conspiracy to Commit Homicide[.]

On May 27, 2008, the Defendant filed Post-Sentence Motions, which included the issues of whether the Court erred in ruling that the Commonwealth could proceed on accomplice liability theory as to the Defendant and whether the Court erred in refusing a mistrial based upon Sean Durrant's outburst[.] On March 4, 2011, the Superior Court of Pennsylvania upheld the Defendant's conviction but found that the Defendant'[s] sentence on the Conspiracy charge was beyond the maximum sentence. On December 11, 2012, the Defendant was re-sentenced by the Court and he received a concurrent twenty (20) to forty (40) years of imprisonment for the charge of Criminal Conspiracy.

*Commonwealth v. Cruz-Echevarria*, 2014 WL 10558551, *4 (Pa. Super. Nov. 25, 2014) (citing *Commonwealth v. Cruz-Echevarria*, No. CR-615-2007, PCRA Court Opinion, dated Aug. 29, 2013) (footnotes omitted).

## II. State Court Proceedings[1]

On May 14, 2008, a jury convicted Echevarria of criminal homicide and criminal conspiracy to commit homicide. (Doc. 1, p. 1; Doc. 1-1, p. 9; *see also* https://ujsportal.pacourts.us, electronic docket number CP-41-CR-0000615-2007). Echevarria was initially sentenced to life imprisonment for first degree murder and a concurrent sentence of life imprisonment on the conspiracy charge. (*Id.*).

---

[1] A federal habeas court may take judicial notice of state court records. *Montanez v. Walsh*, 2014 WL 47729, at *4 n.2 (M.D. Pa. Jan. 7, 2014); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the Court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Lycoming County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

2

Echevarria pursued direct appeal proceedings. On March 4, 2011, the Pennsylvania Superior Court affirmed the convictions, but vacated Echevarria's sentence for conspiracy and remanded for resentencing. (Doc. 18-1, pp. 66-92, *Commonwealth v. Cruz-Echavarria*, No. 1930 MDA 2008 (Pa. Super. March 4, 2011)). On December 11, 2011, the trial court resentenced Echevarria to a concurrent twenty (20) to forty (40) year term of imprisonment on the criminal conspiracy charge. (Doc. 18-1, pp. 93-95, Resentencing Order).

Following resentencing, Echevarria filed a petition for allowance of appeal with the Pennsylvania Supreme Court. On September 12, 2011, the Pennsylvania Supreme Court denied the petition for allowance of appeal. (Doc. 18-1, p. 96, *Commonwealth v. Cruz-Echevarria*, No. 256 MAL 2011 (Pa.)).

On June 11, 2012, Echevarria filed a *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (Doc. 18-1, pp. 97-115, PCRA Petition). The PCRA court appointed counsel, who subsequently filed an amended PCRA petition. (Doc. 18-1, pp. 115-129, Amended PCRA Petition). On August 29, 2013 the PCRA court issued an opinion, and notified Echevarria of the intent to dismiss the PCRA petition. (Doc. 18-1, pp. 130-37, PCRA Court opinion). On October 2, 2013, the PCRA court dismissed the petition. (Doc. 18-1, p. 138, PCRA Court order). Echevarria filed a timely notice of appeal with the Pennsylvania Superior Court. (Doc. 18-1, p. 139, Notice of Appeal). On appeal, Echevarria raised the following three

issues:[2]

> 1. Whether the trial court erred in denying Appellant's PCRA petition where trial counsel failed to object when court improperly expressed to the jury its opinion that commonwealth witness Sean Durrant (who by his own admission killed Eric Sawyer) and [Appellant] were accomplices in the murder of Eric Sawyer, thereby communication to jury [Appellant] was guilty?
>
> 2. Whether the trial court erred in denying Appellant's PCRA petition where trial counsel failed to pursue "revenge theory" on cross examination to impeach Commonwealth witness Sean Durrant, thereby exposing to jury his motives to testify falsely?
>
> 3. Whether the trial court erred in denying Appellant's PCRA petition where trial counsel failed to request a cautionary or limiting instruction from the trial court following a prejudicial outburst from Sean Durrant, the Commonwealth's principal witness?

(Doc. 18-1, pp. 151, Concise Statement of Matters Complained of on Appeal). On November 25, 2014, the Pennsylvania Superior Court affirmed the decision of the PCRA court denying relief. (Doc. 18-1, pp. 154-60, *Commonwealth v. Cruz-Echevarria*, No. 1942 MDA 2013 (Pa. Super. Nov. 25, 2014)). Echevarria did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

### III. Standards of Review

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

---

[2] In the instant habeas petition, Echevarria only raises one of these issues, namely, that trial counsel was ineffective for failing to object to the trial court's instruction to the jury that Sean Durrant was an accomplice. (Doc. 1-1, p. 17).

4

Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

### A. Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845,

119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).³ Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard*, 404 U.S. at 275, 92 S.Ct. 509).

**B. Merits Standard**

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the

---

³ In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004). Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual

decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding

---

[4] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

8

lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

### C. Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will

9

not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

## IV. Discussion

Echevarria argues that trial counsel was ineffective for failing to object to the trial

court's instruction that Sean Durrant was an accomplice to the murder of Eric Sawyer, which Echevarria contends necessarily implicated his guilt. This claim was presented to and denied by the state court. In his PCRA petition, Echevarria argued that the trial court improperly opined to the jury that he and Durrant were accomplices, and that trial counsel should have objected to the court's opinion and moved for a mistrial. The PCRA court discussed, at length, the jury instruction at issue. (Doc. 18-1, pp. 131-33, PCRA Court opinion). The PCRA court rejected this claim and found as follows:[5]

> The Defendant alleges that the Court improperly characterized Durrant and the Defendant as accomplices. To make a claim for ineffective assistance of counsel, a defendant must prove the following: (1) an underlying claim of arguable merit; (2) no reasonable basis for counsel's act or omission; and (3) prejudice as a result, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. Commonwealth v. Cooper, 941 A.2d 655, 664 (Pa. 2007) (citing Commonwealth v. Carpenter, 725 A.2d 154, 161 (1999)). A failure to satisfy any prong of this test is fatal to the ineffectiveness claim. Cooper, 941 A.2d at 664 (citing Commonwealth v. Sneed, 899 A.2d 1067, 1076 (2006)). Further, Counsel is presumed to have been effective. Id.
>
> "It is well-settled that where an accomplice implicates the defendant, the trial court should instruct the jury that the accomplice is a corrupt and polluted source whose testimony should be considered with caution." Commonwealth v. Busanet, 54 A.3d 35, 70 (Pa. 2012); see generally Commonwealth v. Maisonet, 31 A.3d 689 (Pa. 2009). The Defendant points to a small section of the jury instruction, however, a broader and complete review of the transcript is necessary:

---

[5] Because the Superior Court of Pennsylvania expressly adopted the reasoning of the PCRA court, the Court "look[s] through" the Superior Court decision to the last reasoned decision of the state court, viz., the August 29, 2013 PCRA court opinion. See Simmons v. Beard, 590 F.3d 223, 231-32 (3d Cir. 2009); Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008).

Before I begin these instructions let me define for you the term accomplice. I basically done it for you, but I wanted you to have this instruction as well to keep in your mind. A person is an accomplice of another person in the commission of a crime if he or she has the intent or is promoting or facilitating the commission of the crime, and one, solicits the: other person to commit it; or two, aids or agrees or attempts to aid such other person in planning or committing the crime. Put simply an accomplice is a person who knowingly and voluntarily cooperates with or aids another person in committing an offense. When a Commonwealth witness is an accomplice, his or her testimony has to be judged by special precautionary rules. Experience shows that an accomplice when caught may often try to place the blame falsely on someone else. He may testify falsely in the hope of obtaining favorable treatment or for some corrupt or wicked motive. On the other hand, an accomplice may be a perfectly truthful witness. *The special rules that I will give you are meant to help you distinguish between truthful and false accomplice testimony. In view of the evidence of Sean Durrant's criminal involvement you must regard him as an accomplice in the crimes charged and apply the special rules to his testimony.* You must decide whether Sean Durrant was -- strike that. Use this test to determine whether Sean Durrant was an accomplice. Well, I'm telling you that he was. I'm sorry, I'm reading something here I should read to you. He is an accomplice based upon what you heard. These are the special rules that apply to accomplice testimony. First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source. Two, you should examine the testimony of an accomplice closely and accept it only with care and caution. Three, you should consider whether the testimony of an accomplice is supported in whole or in part by other evidence. Accomplice testimony is more dependable if it's supported by independent evidence. However, even if there is no independent supporting evidence you may still find the Defendant guilty solely on the basis of an accomplice testimony if after using the special rules I just told you about you are satisfied beyond a reasonable

> doubt that the accomplice testified truthfully and the Defendant
> is guilty.

N.T., May 14, 2008, p. 84-86 (emphasis added). [I]n full context, the Court was stating that due to Durrant's relationship with the Defendant his testimony should be considered with caution or from a corrupt and polluted source.

These standard jury instructions have already been determined to be adequate by the Supreme Court of Pennsylvania. *See* Pa.SSJI (crim) 4.01. In *Williams*, the trial court instructed the jury with the following instruction:

> When a Commonwealth witness was so involved in the crime charged that he was an accomplice, his testimony has to be judged by certain precautionary rules.
>
> * * *
>
> In view of the evidence of Marc Draper's criminal involvement, you must regard him as an accomplice in the crimes charged and apply the special rules to his testimony. These are the special rules that apply in accomplice testimony: First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source . . .

*Commonwealth v. Williams*, 863 A.2d 505, 519 (Pa. 2000). The Supreme Court found that the instruction did not imply that the defendant was an accomplice but that the witness's statements were coming from a corrupt source. *[I]d.*

Here, the standard instruction adequately and accurately conveyed that Durrant's testimony was coming from a corrupt source. Further, as in *Williams*, the instruction did not imply that the defendant was an accomplice with Durrant. Accordingly, this Court finds that trial counsel was not ineffective for failing to object to the instruction.

(Doc. 18-1, pp. 131-33, PCRA Court opinion).

"In a criminal trial, the State must prove every element of the offense, and a jury

> doubt that the accomplice testified truthfully and the Defendant
> is guilty.

N.T., May 14, 2008, p. 84-86 (emphasis added). [I]n full context, the Court was stating that due to Durrant's relationship with the Defendant his testimony should be considered with caution or from a corrupt and polluted source.

These standard jury instructions have already been determined to be adequate by the Supreme Court of Pennsylvania. *See* Pa.SSJI (crim) 4.01. In *Williams*, the trial court instructed the jury with the following instruction:

> When a Commonwealth witness was so involved in the crime charged that he was an accomplice, his testimony has to be judged by certain precautionary rules.
>
> * * *
>
> In view of the evidence of Marc Draper's criminal involvement, you must regard him as an accomplice in the crimes charged and apply the special rules to his testimony. These are the special rules that apply in accomplice testimony: First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source . . .

*Commonwealth v. Williams*, 863 A.2d 505, 519 (Pa. 2000). The Supreme Court found that the instruction did not imply that the defendant was an accomplice but that the witness's statements were coming from a corrupt source. *[I]d.*

Here, the standard instruction adequately and accurately conveyed that Durrant's testimony was coming from a corrupt source. Further, as in *Williams*, the instruction did not imply that the defendant was an accomplice with Durrant. Accordingly, this Court finds that trial counsel was not ineffective for failing to object to the instruction.

(Doc. 18-1, pp. 131-33, PCRA Court opinion).

"In a criminal trial, the State must prove every element of the offense, and a jury

instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979)). Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding, the only question for the court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be viewed in the context of the instructions as a whole and the trial record." *Id.* A trial judge is given much discretion in determining the language of the jury charge. *See United States v. Flores*, 454 F.3d 149, 161 (3d Cir. 2006) (citing *United States v. Goldblatt*, 813 F.2d 619, 623 (3d Cir. 1987)). Further, the Third Circuit Court of Appeals has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 111 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." *Id.* at 110.

Upon review of the entirety of the record, the Court finds that the trial judge provided

a proper instruction on accomplice testimony and counsel was not ineffective for failing to object to this instruction. In rejecting Echevarria's challenge to this jury instruction, the PCRA court found that the trial court's instruction on accomplice testimony was a proper statement of Pennsylvania law. Specifically, the PCRA court found that the trial judge recited the standard jury instruction for accomplice testimony from the Pennsylvania Suggested Standard Criminal Jury Instructions (Pa.S.S.J. I § 4.01, Accomplice Testimony). The PCRA court further found that this instruction was expressly deemed adequate by the Pennsylvania Supreme Court in *Commonwealth v. Williams*, 863 A.2d 505 (Pa. 2000). As in *Williams*, the PCRA court found that the jury instruction did not imply that Echevarria was an accomplice. Rather, the instruction informed the jury that Durrant was an accomplice, and when a witness is an accomplice, the jury must scrutinize the witness' testimony with caution and as coming from a corrupt source, and determine beyond a reasonable doubt that the testimony is truthful before convicting an individual based on the testimony of an accomplice.

The Third Circuit has held that "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." *United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002). Since the jury instruction at issue was entirely in line with the Pennsylvania Suggested Standard Criminal Jury Instructions and Pennsylvania law, and did not violate any constitutional standard, its use at Echevarria's trial could not

have violated his right to due process. The state court's decision rejecting this claim is not contrary to, or an unreasonable application of, clearly established federal law. Furthermore, Echevarria has failed to establish a claim for ineffective assistance of trial counsel because the state court expressly determined that the jury instruction was a proper statement under Pennsylvania law. Thus, because the jury instruction was sufficient, trial counsel cannot be deemed ineffective for failing to object to the instruction. *See Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004). As such, trial counsel's failure to raise a meritless objection did not violate professional norms and could not have prejudiced Echevarria. *See Strickland*, 466 U.S. 668.

## V. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at

least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. As such, a certificate of appealability will not issue.

## VI. Conclusion

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate Order shall issue.

Date: April 25, 2019

Robert D. Mariani
United States District Judge